FILED
2019 Aug-07 AM 08:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **AUNDREA NICOLE FREEMAN,** o/b/o I.F., <br><br> Plaintiff, <br> v. <br><br> **NANCY A. BERRYHILL,** Commissioner, SSA, <br><br> Defendant. | Civil Action Number <br> 4:18-cv-00037-AKK |

## MEMORANDUM OPINION

Aundrea Nicole Freeman brings this action on behalf of her minor child, I.F., pursuant to Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the Administrative Law Judge's ("ALJ's") denial of disability insurance benefits, which has become the final decision of the Commissioner of the Social Security Administration ("SSA"). For the reasons explained below, the court finds that the ALJ applied the correct legal standards and that his decision is supported by substantial evidence. Accordingly, the decision is due be affirmed.

### I.  PROCEDURAL HISTORY

Freeman filed an application for Disability Insurance Benefits ("DIB") on behalf of her minor daughter, I.F., asserting that I.F. suffered from a disability

beginning on August 31, 2009 due to autism. R. 244, 258. On April 6, 2011, the SSA found I.F. to be disabled as defined by the Act beginning January 19, 2011, when I.F. was three years old, and awarded her benefits. R. 45. As required by statute, the SSA conducted a continuing disability review and determined that I.F. was no longer disabled for purposes of the Act as of January 1, 2015, when I.F. was seven years old. R. 45, 86-87, 90. Freeman requested reconsideration, and a disability hearing officer upheld the finding that I.F. was no longer disabled. R. 45, 89, 95-98, 105-13. Subsequently, Freeman requested a hearing before an ALJ, who also found that I.F.'s disability ended as of January 1, 2015 and that I.F. has not been disabled since that date. R. 45, 135. The SSA Appeals Council denied Freeman's request for review, rendering the ALJ's decision the final decision of the Commissioner. R. 1. Having exhausted her administrative remedies, Freeman filed this petition for review pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). Doc. 1.

## II. STANDARD OF REVIEW

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, see 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "'reasonable and supported by substantial evidence.'" *Id.* (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "'[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Id.* (quoting *Bloodsworth*, 703 F.2d at 1239). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against those findings. *See id.* While judicial review of the ALJ's findings is limited in scope, it "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

In contrast to the deferential review accorded the Commissioner's factual findings, "conclusions of law, including applicable review standards, are not presumed valid" and are subject to de novo review. *Martin*, 894 F.2d at 1529. The Commissioner's failure to "apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed" requires reversal. *Id.*

### III. STATUTORY AND REGULATORY FRAMEWORK

An individual applying for DIB bears the burden of proving that she is disabled. *Moore v. Barnhart*, 405 F.3d 1208 (11th Cir. 2011) (citation omitted). To

qualify, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

For claimants under age 18, determination of disability under the Act requires a three-step analysis. Specifically, the Commissioner must determine in sequence:

(1) whether the child is working;
(2) whether the child has a severe impairment or combination of impairments; and
(3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the Listing of Impairments.

*Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (citing 20 C.F.R. § 416.924(a)). A child's impairment "medically equals' the limitations in a listed impairment "if the child's limitations 'are at least of equal medical significance to those of [the] listed impairment.'" *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1279 (11th Cir. 2004) (quoting 20 C.F.R. § 416.926(a)(2)). To determine whether a child's impairment or combination of impairments "functionally equals" a listed impairment, the ALJ must assess the

4

degree to which the impairments limits the child's activities across the following six domains:

> (1) acquiring and using information;
> (2) attending and completing tasks;
> (3) interacting and relating with others;
> (4) moving about and manipulating objects;
> (5) caring for [her]self; and
> (6) health and physical well-being

*Parks*, 783 F.3d at 851 (citing 20 C.F.R. §§ 416.926a(a), (b)(1), (d)). A child's impairment, or combination of impairments, functionally equals the listings, resulting in a finding a disability, when the child suffers from an "extreme" limitation in one of the domains, or a "marked" limitation in two of the six domains. *Id*. (citing 20 C.F.R. § 416.926a(a)). Under the regulations, a "marked" limitation is "more than moderate," but "less than extreme, and it "seriously" interferes with a child's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An extreme limitation is "more than marked," and it "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities. *Id.* at § 416.926a3(e)(3)(i). "In determining whether a child has 'marked' or 'extreme' limitations in a domain, an ALJ should consider how the child performs in a supportive setting . . . ." *Muhammad ex. Rel. T.I.M. v. Comm'r of Soc. Sec. Admin.*, 395 F. App'x 593, 600 (11th Cir. 2010) (citing 20 C.F.R. § 416.926a(a)).

When conducting a continuing disability review of a claimant under the age of eighteen, the SSA uses a three-step analysis to determine whether the child

5

continues to be disabled for purposes of the Act. *See* 20 C.F.R. § 416.994a. First, the SSA must determine whether medical improvement has occurred in the impairment that the child had at the time of the most recent determination that she was disabled (the comparison point decision or "CPD"). *Id.* at § 416.994a(b)(1). If there has been such an improvement, the SSA continues to step two to determine if the impairment the child had at the CPD equals, medically equals, or functionally equals the listings. *Id.* at § 416.994a(b)(2). If it does, the child is still disabled under the Act. If it does not, the analysis continues to step three. At this last step, the SSA determines if the child now has an impairment, or combination of impairments, that are severe, and that meet, medically equal, or functionally equal the listings. *Id.* at § 416.994a(b)(3). If the child does not have such an impairment or combination of impairments, the SSA finds that she is no longer disabled under the Act.

## IV. THE ALJ'S DECISION

The ALJ found that as of April 6, 2011 (the date of the CPD), I.F. had the medically determinable impairment of autism, which met section 112.10A2B1b of the listings. R. 48.[1] Then, following the three-step analysis to determine continuing

---

[1] At the time of the CPD, Listing 112.10 stated in part as follows:
112.20: Autistic Disorder and Other Pervasive Developmental Disorders: Characterized by qualitative deficits in the development of reciprocal social interaction, in the development of verbal and nonverbal communication skills and in imaginative activity. Often, there is a markedly restrictive repertoire of activities and interests, which frequently are stereotyped and repetitive.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

6

disability, the ALJ first found that I.F. experienced a medical improvement of her impairment as of January 1, 2015. R. 48. Proceeding to step two, the ALJ determined that since January 1, 2015, I.F.'s impairment of autism did not meet or medically equal section 112.10A2B1b of the listings, as that listing was written at the time of the CPD. R. 49. Next, the ALJ found that since January 1, 2015, I.F.'s impairment at the time of the CPD, i.e., autism, had not functionally equaled the listing. R. 50. To reach this decision, the ALJ rated I.F.'s functioning across the six domains, determining that she had marked limitations in only one domain (Attending and Completing Tasks) and less than marked limitations or no limitations in the remaining five domains. R. 51-56.

Having determined that I.F.'s impairment of autism no longer met or equaled the listing it met at the CPD, the ALJ continued to step three to determine if I.F. was otherwise disabled under the regulations. The ALJ found that since January 1, 2015,

---

A. Medically documented findings of the following:
. . .
    2. For other pervasive developmental disorders, both of the following:
        a. Qualitative deficits in the development of reciprocal social interaction; and
        b. Qualitative deficits in verbal and non-verbal communication and in imaginative activity;
AND

B. For older infants and toddlers (age 1 to attainment of age 3), resulting in at least one of the appropriate age-group criteria in paragraph B1 of 112.02; or, for children (age 3 to the attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraphs B2 of 112.02.

20 C.F.R. pt. 404, subpt. P., app. 1, § 112.10 (2011).

I.F. has had the severe impairments of autism, pervasive developmental disorder, and borderline intellectual functioning, but that I.F.'s impairments do not meet, medically equal, or functionally equal the listings. R. 56. Accordingly, the ALJ found that I.F.'s disability ended as of January 1, 2015, and that she has not been disabled under the Act since that time. R. 60.

V. ANALYSIS

Freeman contends that the Commissioner's decision should be reversed, and I.F. awarded benefits because (1) I.F.'s impairments functionally equal the listings and (2) substantial evidence does not support the finding of medical improvement to the point of no disability. Doc. 1 at 2, 20-29. The court addresses these issues in turn.

A. **Whether I.F.'s impairments functionally equal the listings**

Freeman first argues that substantial evidence does not support the ALJ's determination that I.F.'s impairments did not functionally equal the listings of impairments as of January 1, 2015. Doc. 11 at 20. In particular, Freeman maintains that contrary to the ALJ's finding that I.F. has a marked limitation in only one domain, I.F. has a marked or extreme impairment in four of the six domains. *Id.* at 20-21. But, as explained below, substantial evidence supports the ALJ's determination.

To determine if I.F.'s impairment, or combination of impairments, functionally equal the listings, the ALJ considered I.F.'s medical and education

8

records, academic performance, teacher evaluations, and Freeman's testimony to assess the degree to which I.F.'s impairments limit her activities across the six domains. *See* R. 48-56. The ALJ's findings with respect to three of the domains are not in contention—Freeman did not dispute the ALJ's determination that, since January 1, 2015, I.F. has no limitation in moving about and manipulating objects, and less than marked limitation in health and physical wellbeing, *see* doc. 11 at 20-28; R. at 54-56, and Freeman agrees with the ALJ's finding that I.F. has a marked limitation in attending and completing tasks, doc. 11 at 22; R. 52. Freeman contends, however, the ALJ should have also found that I.F. has marked limitation in the following three domains: acquiring and using information, interacting and relating with others, and caring for herself. Doc. 11 at 20. Basically, Freeman states that her testimony and I.F.'s individualized educational programs ("IEPs") from her elementary school support a finding of marked limitations in these domains. Doc. 11 at 21-25. But, the issue before the court is whether substantial evidence supports the ALJ's finding, not whether evidence may support a contrary finding. *See Martin*, 894 F. 2d at 1529 (citations omitted). And, as explained fully below, the substantial evidence supports the ALJ's decision.

1. <u>Acquiring and Using Information</u>

The "acquiring and using information" domain relates to how well a child acquires or learns information, and how well the child uses the information. 20 C.F.R. § 416.926a(g). Based on the applicable regulations, a school-age child I.F.'s

9

age with no limitations "should be able to learn to read, write, and do math, and discuss history and science," and "be able to use increasingly complex language . . . to share information and ideas . . . ." *Id.* at § 416.926a(g)(2)(iv). In reaching the conclusion that, since January 1, 2015, I.F. has had less than marked limitation in acquiring and using information, R. 52, 59, the ALJ noted that I.F. has shown improvement in her academic functioning and found that reports from I.F.'s teachers, mother, and the opinion of a consultative examiner support his finding. R. 52. Indeed, Freeman testified that I.F. is an A/B student, although she still receives special education services. R. 49, 52, 71, 76. In addition, I.F.'s academic records reveal that I.F. mastered, or was expected to master, all of her second and third grade IEP goals in reading, writing, and speech/language, and, as of second grade, I.F. read at the benchmark level for her grade. R. 49, 331-38, 403, 423. I.F.'s IEP goal progress report from second grade also states that I.F. "mastered the benchmark of answering a vocabulary question correctly" and "is making great progress in the area of reading," R. 403, and her IEP for third and fourth grade shows that I.F. "does well with basic math facts," "gets her thoughts on paper and is very good at using punctuation and sentence structure," and "has grown in all academic areas . . . ." R. 416. Moreover, I.F.'s second grade teacher reported that I.F. has no more than a slight problem with any aspect of acquiring and using information. R. 349. Lastly, at a consultative psychological evaluation on January 19, 2015, Dr. Sharon D. Waltz found that I.F.'s "ability to function in an age appropriate manner cognitively" to be

only "[m]ildly [i]mpaired." R. 502. Based on these records, substantial evidence supports the ALJ's finding that I.F. has less than marked limitation in acquiring and using information.

### 2. Interacting and Relating with Others

Next, for the "interacting and relating with others" domain, the SSA considers how well a child is able to "initiate and sustain emotional connections with others, develop and use the language of [her] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). The regulations provide that with respect to this domain, a school-age child without impairments should be able to, among other things, "develop more lasting friendships with children [her] age," "understand how to work in groups," and "be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that . . . listeners readily understand." *Id.* at § 416.926a(i)(iv). Relevant to this domain, the ALJ found that since January 1, 2105, I.F. has had less than a marked limitation, and he pointed to the opinions of consultative examiners and reports from I.F.'s teachers and mother to support his finding. R. 53, 59. The evidence the ALJ referenced includes (1) I.F.'s second grade teacher who reported that she observed no problems with I.F.'s interacting with others and that I.F. functioned age appropriately in this domain, R. 351; (2) I.F.'s third grade teachers who reported observing only slight problems in I.F.'s functioning in this domain, R. 433-34, 440-41; (3) I.F.'s second grade IEP goal

progress report and third to fourth grade IEP, which reflected that I.F "works and plays well with her peers," R. 403, 416-17; and (4) a consultative psychological evaluation with Dr. Waltz that noted that I.F. reported "mostly getting along well with peers," and Dr. Waltz's opinion that I.F. "is able to mostly relate to other[s] well." R. 500, 502. Moreover, based on his review of the record, the ALJ noted that there is no evidence I.F. has "any persistent communication or disciplinary issues." R. 53. Thus, substantial evidence supports the ALJ's finding that I.F. has had a less than marked limitation in this domain since January 1, 2015.

### 3. Caring for Herself

To evaluate a child's functioning in the "caring for yourself" domain, the SSA considers how well the child is able to "maintain a healthy emotional and physical state," cope with stress and changes in [her] environment," and "take care of [her] own health, possessions, and living area." 20 C.F.R. § 416.926a(k). The regulations provide that a school-age child without impairments should "be independent in most day-to-day activities (e.g., dressing [her]self, bathing [her]self), although [she] may still need to be reminded sometimes to do these routinely." *Id.* at § 416.926a(k)(iv).

According to the ALJ, since January 1, 2015, I.F. has had no limitation in this domain, finding that I.F. "cares for herself as any other child her age," that no evidence exists of any limitation in this domain, and that "no limitation was alleged in this domain." R. 55. The ALJ maintains, without elaboration, that his finding is supported by the opinions of the consultative examiners and reports from I.F.'s

teachers and mother. R. 55. Indeed, I.F.'s second grade teacher reported that she observed that I.F. had no problems with caring for herself and that I.F.'s functioning appears age-appropriate in this domain. R. 353. And, while I.F.'s third grade teachers reported that I.F. had a "slight problem" with handling frustration appropriately, that issue occurred only infrequently, i.e., monthly, rather than weekly or daily. R. 435, 442. In addition, based on her observations from her 2015 consultative exam, Dr. Waltz opined that I.F. "is able to function primarily independently with assistance." R. 502. Finally, based on a review of I.F.'s records, Dr. Robert Estock, a state agency consultant, opined that I.F. has no limitation in caring for herself. R. 506. This evidence indicates that I.F. can care for herself like other children her age without her impairments, and it supports the finding that I.F. has no limitation in this domain.

However, the ALJ did not address Freeman's testimony regarding I.F.'s ability to care for herself. *See* R. 55. In particular, Freeman testified that: (1) I.F. sometimes does not want to get dressed in the morning for school, and Freeman has to dress her "as if she's an infant;" (2) Freeman sometimes has to brush I.F.'s teeth for her; (3) I.F. requires help bathing because she does not rinse soap off when she is allowed to bathe herself; and (4) I.F. has had several accidents at school because I.F. is too shy to ask a teacher if she may go to the restroom. R. 72, 78. Freeman's testimony also reveals that I.F. has difficulty soothing herself, and I.F. wants to be held and soothed every day. R. 75, 77, 81-82. Moreover, in function reports dated

August 10, 2014 and February 13, 2015, Freeman reported that I.F. has difficulty dressing and bathing herself, and that I.F. "has temper tantrums/meltdowns often." R. 242, 359. The ALJ erred by ignoring the testimony and reports from I.F.'s mother. *See Shinn*, 391 F.3d at 1283. But, even so, the error is harmless because Freeman's testimony and reports are not sufficient to show a marked limitation in this domain. In addition, as discussed above, the evidence relied on by the ALJ provides substantial support for his finding that I.F. has no limitations in her ability to care for herself in an age-appropriate manner. *See Taylor ex rel. McCaster v. Comm'r of Soc. Sec. Admin.*, 213 F. App'x 778, (11th Cir. 2006) (finding the ALJ's failure to make any credibility determination with respect to testimony was no reversible error in part because other evidence supported the ALJ's determination).

To summarize, substantial evidence supports the ALJ's finding that since January 1, 2015, I.F. has not had a marked limitation in her function in at least two of the six domains of living, or an extreme limitation in one domain. Consequently, the ALJ's conclusion that I.F.'s impairments, or combination of impairments, has not functionally equaled the listings is due to be affirmed.

### B. Whether substantial evidence supports the finding of medical improvement to the point of no disability

In a cessation of benefits case, such as this one, the court "must ascertain whether the [Commissioner's] finding of improvement to the point of no disability is supported by substantial evidence." *Simpson v. Schweiker*, 691 F.2d 966, 969

(11th Cir. 1982), *rev'd on other grounds by Hand v. Heckler*, 761 F.2d 1545 (11th Cir. 1985). When the evidence in a cessation case "is substantially the same as the evidence had been in the initial disability benefits request case, benefits must be continued." *Id.* Freeman argues that there is no substantial evidence to support the ALJ's finding that I.F's autism had improved to the point of no disability. Doc. 11 at 2, 28-29. For the reasons discussed below, the court disagrees.

The SSA found I.F. disabled in 2011 because her impairment of autism met Listing 112.10A2B1b. R. 48. As the ALJ described, at the time of the CPD, I.F. was three-years old, was not toilet trained, used a lot of "jargon," and she had limited intelligible speech. R. 48, 108, 459. In addition, she was sensitive to loud sounds, upset with changes, her motor skills were slightly delayed, and she engaged in a lot of "hand flapping." R. 108, 458-60, 462, 482. Moreover, her preschool teachers reported that I.F. had "a very serious problem with interacting and relating to others," "a serious problem taking care of self, and problem with controlled motor movements." R. 108. And, based on an examination on January 6, 2011, Zolinda Cochran, from Glenwood found that I.F. met the criteria for autism. R. 108, 461.

However, when I.F.'s benefits ceased in 2015, I.F. was seven years old and had no trouble speaking. R. 49. In addition, as the ALJ noted, I.F's IEPs reveal that she mastered all of her second and third grade IEP goals, and in second grade, she was reading at the benchmark level for her grade. R. 49, 331-38, 403, 416, 423. Moreover, reports from her second and third grade teachers indicated that I.F. was

doing well in school, had only slight problems relating to others, and could communicate well, and I.F's mom testified that I.F. was an A/B student. R. 49, 52, 71, 76, 349, 403. And, at a consultative psychological evaluation on January 19, 2015, Dr. Waltz observed "no unusual mannerisms, tics or gestures" by I.F. R. 501. All of this evidence provides substantial support for the ALJ's finding that I.F.'s impairment of autism had improved to the point of no disability.

## VI. CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that I.F. has not been disabled since January 1, 2015 is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching his decision. Therefore, the Commissioner's final decision is due to be affirmed. A separate order in accordance with this memorandum opinion will be entered.

**DONE** the 7th day of August, 2019.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE